IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-CV-00646

RUAG SWITZERLAND LTD.,
a Swiss corporation,

Plaintiff,

v.

SEAKR ENGINEERING, INC.,
a Colorado corporation,

Defendant.

---

**PLAINTIFF RUAG SWITZERLAND LTD.'S COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND FRAUD**

---

Plaintiff, RUAG Switzerland Ltd. ("RUAG" or "Plaintiff"), through undersigned counsel, hereby submits this Complaint against SEAKR Engineering, Inc. ("SEAKR" or "Defendant") for Breach of Contract and Fraudulent Inducement, stating as follows:

## PARTIES

1. RUAG is a corporation existing under the laws of Switzerland, with its headquarters in Bern, Switzerland.

2. SEAKR is, upon information and belief, a Colorado corporation with its principal place of business located at 6221 S. Racine Circle, Centennial, Colorado, 80111.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this action by reason of the parties' diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(2). The amount in controversy exceeds $75,000, excluding interest and costs.

4. This Court has personal jurisdiction over SEAKR because SEAKR is a Colorado corporation which conducts business, including but not limited to the transactions that are the subject matter of this lawsuit in this judicial district or otherwise has sufficient contacts with the state.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (2). Substantial acts in furtherance of the alleged improper conduct occurred within this judicial district. SEAKR engages in business and transactions in this judicial district. The misrepresentations that form the basis for the Fraud claim were largely made by SEAKR while it was in this judicial district. By its Complaint, RUAG seeks both damages and injunctive relief. Thus, even if one or more of the underlying claims were subject to arbitration pursuant to an agreement between the parties, venue is also proper in this Court to adjudicate RUAG's request for injunctive relief.

## FACTUAL BACKGROUND

6. RUAG is a Swiss technology company engaged in technology research, product development, sales and support in the areas of aerospace, security and defense. RUAG services both the civilian and military markets with leading technology products including satellites, virtual simulators and high-end telecommunications technologies. RUAG regularly teams with

international technology partners such as: Airbus, Boeing, European Space Agency (ESA), Hilti, Krauss-Maffei Wegmann, Rheinmetall and Saab.

7. SEAKR is in the process of developing an ASIC named ADDA™, which is a digital signal processing application-specific integrated circuit ("ADDA ASIC"). The ADDA ASIC is intended to be a building block for digital telecom satellites providing flexible beamforming and channelization functionalities.

8. On or about March 2016, SEAKR approached RUAG with an investment opportunity, in which SEAKR offered RUAG the opportunity to invest in SEAKR's development of the ADDA ASIC in exchange for RUAG access to intellectual property in the ADDA ASIC and RUAG's ability to sell digital payload products making use of the ADDA ASIC in the European market. RUAG and SEAKR entered into discussions regarding an arrangement whereby RUAG would provide support and assistance to SEAKR in the development of the ADDA ASIC and whereby RUAG would obtain the exclusive right to engage in the further development and exploitation of the ADDA ASIC in Europe. During the course of these discussions, SEAKR repeatedly promised RUAG, both orally and in writing, that RUAG would be a preferred partner of SEAKR, that the parties would work together toward on the development of the ADDA ASIC, and that the parties would exclusively work together as teammates to exploit the ADDA ASIC in the European market. The parties also intended to be in a workshare relationship on all programs worldwide, in which RUAG would provide certain hardware scope to SEAKR on all programs, not just in the European market.

9. On or about June 29, 2016, RUAG and SEAKR entered into a Joint Development, Marketing and License Agreement ("JDA"). The goal of the JDA is the collaborative

development and deployment of the ADDA ASIC technology and associated technologies. The JDA provides the basic framework, terms and conditions for technical exchanges between RUAG and SEAKR. A true and correct copy of the JDA is attached hereto as Exhibit A.

10. Pursuant to Section 4.1(a) of Exhibit A, RUAG was promised a royalty free, exclusive license to the technology embodied in the ADDA ASIC technology. Similarly, pursuant to Section 5.1(a) of Exhibit A, RUAG was promised that RUAG would be a preferred partner of SEAKR on other programs for which the ADDA ASIC technology would be proposed. Finally, pursuant to Section 5.3(d) of Exhibit A, RUAG was promised a right of first refusal to acquire any intellectual property rights in the ADDA ASIC that SEAKR may decide to abandon or transfer to any third party.

11. Each of these promises was material to RUAG in its decision to enter into the JDA with SEAKR. RUAG would not have entered into the JDA in the absence of these promises, and RUAG advised SEAKR that these terms were material to RUAG and RUAG's willingness to enter into the JDA.

12. SEAKR repeatedly assured RUAG that it understood the importance of these promises to RUAG and that it would abide by these promises under the JDA. Despite these clear promises and obligations, SEAKR misrepresented the rights it was granting to RUAG and, RUAG is informed and believes that SEAKR never intended to honor or perform these material promises and obligations despite express promises to the contrary by SEAKR.

13. Shortly after entering into the JDA, RUAG learned for the first time that SEAKR had a preexisting relationship with a potential competitor of RUAG named CSP Associates. Under that agreement, SEAKR had promised CSP Associates access to the ADDA ASIC

technology for use at the X-band. The X-band is a material part of the communication spectrum used for satellite, terrestrial and space communications. This pre-existing agreement breaches and destroys the material promise of RUAG exclusive rights for products and programs (which included products that operate at the X-band), and materially reduced RUAG's opportunities for the exploitation of the ADDA ASIC technology and for partnership with SEAKR on such opportunities.

14. The non-disclosure of the pre-existing agreement with CSP Associates is material to RUAG and indicates that SEAKR defrauded RUAG into entering into the JDA and/or never had any intention of performing the obligations and promises contained in the JDA. Had SEAKR disclosed the agreement between SEAKR and CSP Associates prior to the execution of the JDA, RUAG would not have entered into the JDA on the terms contained therein.

15. Despite the exclusive rights and "preferred partner" status afforded to RUAG under Sections 4.1, 5.1 and 5.3 of the JDA, and the right of first refusal in section 4.5 of the JDA, on or about August 20, 2016, without any notice to RUAG or its consent, SEAKR entered into an agreement with Orbital ATK, an aerospace manufacturer and defense company, which blocks an entire the class of satellites at OHB which was one of RUAG's few remaining marketplace opportunities.

16. By entering into this agreement, SEAKR breached its material promises to RUAG to grant it exclusive rights in the ADDA ASIC, the promises to treat RUAG as a preferred partner, and the RUAG right of first refusal, by subverting European Marketplace opportunities that SEAKR had guaranteed to RUAG, including opportunities for commercial GEO payloads under 8.5 kW payload power. These opportunities were material to RUAG's decision to enter

into the JDA, and further illustrate, on information and belief, that SEAKR's intent to defraud RUAG based on SEAKR never intending to perform the material obligations and promises it made to RUAG under the JDA. Moreover, SEAKR's unilateral move of entering into the Orbital ATK agreement blocked the one possible remaining European Marketplace opportunity available to RUAG, namely a digital payload opportunity with the German satellite manufacturer OHB, whose Electra GEO platform is currently limited to 8 kW payload power, and thus precluded for RUAG due to the 8.5 kW provision in the Orbital ATK agreement.

17. On or about July 14, 2016, SEAKR disclosed to RUAG that it had been approached by SES S.A. ("SES"), a communications satellite owner and operator based in Betzdorf, Luxembourg, regarding a potential investment by SES in SEAKR for access to the ADDA ASIC. According to SEAKR, the terms of the SES investment required that royalties be paid to SES on all ADDA ASIC products sold worldwide. Upon information and belief, SES raised concerns with SEAKR that the JDA would limit SES's ability to sell and distribute products in SES's desired marketplace.

18. SES is a target customer of RUAG in the European Marketplace, and the success of RUAG's ability to obtain any benefit under the JDA depend on RUAG capturing European customers, including SES.

19. Despite SEAKR's knowledge of the terms of the JDA and RUAG's exclusive rights to the European Marketplace, SEAKR's promise to treat RUAG as a preferred partner, and RUAG's right of first refusal under the JDA, SEAKR has, and states that it intends to continue to maintain, a direct relationship with SES, which relationship will further thwart the ability of RUAG to obtain any value under the JDA and is contrary to the terms of the JDA including,

without limitation, the covenant of good faith and fair dealing. This conduct is a breach of the material terms of the JDA and, on information and belief, is further supports RUAG's belief that SEAKR intended to defraud RUAG and/or never intended to perform its material obligations to RUAG under the JDA.

20. On or about July 17, 2016, SEAKR requested that RUAG renegotiate the JDA, to require the payment of royalties on all sales of the ADDA ASIC technology to SES, to consolidate RUAG's license rights under the JDA and to allow SEAKR the unilateral right to transfer intellectual property rights to third parties for the purpose of obtaining additional funding for SEAKR without regard for the right of first refusal granted to RUAG under the JDA.

21. RUAG rejected SEAKR's proposed changes as they would further reduce the European Marketplace target customer base available to RUAG for the ADDA ASIC products under the JDA and destroy any ability of RUAG to obtain any benefit under the JDA. RUAG nonetheless met with SEAKR in good faith to address SEAKR's stated need for additional funding and SEAKR's conduct under the JDA.

22. In or about September 23, 2016, RUAG and SEAKR entered into an amended JDA ("Amended JDA"). A true and correct copy of the Amended JDA is attached hereto as Exhibit B. The Amended JDA did not modify RUAG's exclusive rights, RUAG's "preferred partner" status or RUAG's right of first refusal provided in the JDA, nor did it release SEAKR from any prior breaches or fraudulent conduct toward RUAG.

23. The only material change made by the Amended JDA was that the parties would, pursuant to Section 5.3(f) of Exhibit B, agree to transform the JDA into a workshare agreement within 6 month of the execution of the Amended JDA.

24. Due to the compromises made in the ability of RUAG to obtain a benefit under the JDA due to the misconduct and fraud of SEAKR, RUAG made it clear that the transformation of the JDA into an acceptable workshare agreement as envisioned by the Amended JDA was a material term that RUAG required to go forward with a relationship with SEAKR, and that RUAG would not have agreed to the Amended JDA but for the agreement to transform the JDA into an acceptable workshare agreement.

25. Notwithstanding the materiality of the transformation of the JDA into an acceptable workshare agreement, SEAKR refused to honor its promise or commitment. RUAG is informed and believes that SEAKR never intended to honor this material promise and commitment based on the actions of SEAKR after the Amended JDA was signed by RUAG.

26. For example, RUAG repeatedly sought to schedule a kick-off meeting for the week of October 10, but SEAKR refused those requests. Indeed, SEAKR advised that it was not ready to participate in a kick-off meeting with RUAG technical personnel. SEAKR's refusal to work together on developing a cohesive strategy for marketing products and services can only be designed to prevent RUAG from recouping a reasonable return on its investment. This conduct further supports RUAG's belief that SEAKR sought to defraud RUAG and/or the fact that SEAKR never intended to perform its clear promises and obligations to RUAG under the Amended JDA. SEAKR only recently sought a kick off meeting after RUAG indicated an intent to terminate the agreements due to the multiple breaches and fraudulent conduct of SEAKR.

27. As a further example, on or about November 1, 2016, SEAKR's Vice President Robert Harr advised RUAG that, contrary to the terms of the JDA and the Amended JDA, SEAKR would neither sell ADDA ASIC chips to RUAG nor would it provide RUAG with

product specifications, drawings, and technical data necessary for RUAG to utilize ADDA ASICs purchased from SEAKR. SEAKR's reason for refusing to sell ADDA ASICs to RUAG is based on the export approval SEAKR received from the U.S. Department of Commerce (the "Export Approval Letter"). Mr. Harr identified the issue as "[t]he constraint comes in the Conditions and specifically number 2." Mr. Harr continued, stating "Yes, we could sell you chips, but would not be able to support the in depth debugging required to make to completely operational."

28. But as Mr. Harr expressly recognized in his correspondence, the item in the Export Approval Letter identified by Mr. Harr merely provides that SEAKR cannot provide debugging assistance to RUAG should it need such assistance in the future for ADDA ASICs purchased by RUAG under the JDA or the Amended JDA. The Export Approval Letter does not prevent the sale of ADDA ASICs to RUAG nor does it impact the delivery of ADDA ASIC Licensed Intellectual Property to RUAG as required by the JDA and the Amended JDA. Indeed, the JDA and the Amended JDA are written so as to enable RUAG to implement purchased ADDA ASICs in RUAG ADDA PRODUCTS without assistance from SEAKR.

29. SEAKR's decision to repudiate the JDA and the Amended JDA was not supported by the Export Approval Letter. Instead, RUAG is informed and believes that SEAKR's purported reliance on the Export Approval Letter to repudiate RUAG's rights under the JDA and the Amended JDA was a pretext intended to disguise SEAKR's intention to defraud RUAG and/or the fact that SEAKR never intended to perform its clear obligations to RUAG.

30. RUAG has made multiple requests that the parties move forward with an acceptable workshare agreement, the sole consideration for RUAG to enter into the Amended

JDA with SEAKR, and SEAKR has continually refused to do so. Instead, SEAKR has suddenly sought to schedule a kick-off meeting for Phase 2 of the JDA in an attempt to create a contractual obligation for RUAG to provide additional funding to SEAKR under the JDA and the Amended JDA. RUAG is informed and believes, and thereby alleges, that SEAKR never intended to agree to transform the JDA or Amended JDA into a workshare agreement and thereby defrauded RUAG and/or obtained RUAG's consent to enter into the Amended JDA through such fraud.

## FIRST CLAIM FOR RELIEF
**Breach of Contract as to SEAKR**

31. RUAG hereby adopts and incorporates by reference its allegations in Paragraphs 1 through 30 above as though set forth fully herein.

32. Pursuant to the JDA, RUAG has various rights, including without limitation: (i) a royalty-free, worldwide, non-transferrable irrevocable, exclusive license to all ADDA ASIC Licensed Intellectual Property; (ii) a right as a preferred partner in any projects where RUAG can be competitive; and, (iii) a right of first refusal to acquire any intellectual property rights in the ADDA ASIC that SEAKR may decide to transfer to a third party.

33. Despite the terms of the JDA, SEAKR has refused to uphold or enforce RUAG's exclusive rights.

34. RUAG has performed all of its obligation under the JDA, except those obligations that have been waived, excused or made impossible by SEAKR's conduct.

35. As a direct and proximate result of SEAKR's breach, RUAG been damaged in excess of the minimum jurisdiction of this Court.

36. RUAG has demanded, to no avail, that SEAKR cease its efforts to undermine RUAG's rights pursuant to the JDA. SEAKR continues to aid Orbital ATK in infringing upon

RUAG's exclusive rights and their intrusion into RUAG's share of the European Marketplace. The existence of the Orbital ATK agreement, blocks RUAG from pursuing bidding on those same programs through OHB in Europe. Therefore, the very agreement between SEAKR and Orbital ATK is causing and will continue to cause RUAG harm.

37. RUAG is entitled to specific performance by SEAKR of the JDA. RUAG lacks an adequate remedy at law and will continue to suffer irreparable harm if SEAKR is not enjoined from aiding, promoting, and dealing with, Orbital ATK with regard to the ADDA ASIC technology, or with others in violation of RUAG's right of first refusal.

38. Unless preliminary and permanent injunctive relief is granted, RUAG will not be adequately secured in its rights pursuant to the JDA.

39. Alternatively, RUAG is entitled to rescind the JDA. RUAG will restore everything of value received under the JDA, conditioned on a simultaneous restoration to it of the consideration it furnished to SEAKR.

40. RUAG is entitled to restitution of its costs, expenses and damages incurred as a result of the JDA in order to restore the parties to their respective positions as they existed prior to the JDA.

## SECOND CLAIM FOR RELIEF
## Breach of Contract as to SEAKR

41. RUAG hereby adopts and incorporates by reference its allegations in Paragraphs 1 through 30 and 32 through 40 above as though set forth fully herein.

42. Pursuant to the Amended JDA, RUAG has various rights, including without limitation: (i) a royalty-free, worldwide, non-transferrable irrevocable, exclusive license to all ADDA ASIC Licensed Intellectual Property; (ii) a right as a preferred partner in any projects

where RUAG can be competitive; and, (iii) a right of first refusal to acquire any intellectual property rights in the ADDA ASIC that SEAKR may decide to transfer to a third party.

43. Despite the terms of the Amended JDA, SEAKR has refused to uphold or enforce RUAG's exclusive rights.

44. RUAG has performed all of its obligation under the Amended JDA, except those obligations that have been waived, excused or made impossible by SEAKR's conduct.

45. As a direct and proximate result of SEAKR's breach, RUAG been damaged in excess of the minimum jurisdiction of this Court.

46. RUAG has demanded, to no avail, that SEAKR cease its efforts to undermine RUAG's rights pursuant to the Amended JDA. SEAKR continues to aid Orbital ATK in infringing upon RUAG's exclusive rights and their intrusion into RUAG's share of the European Marketplace. The existence of the Orbital ATK agreement, blocks RUAG from pursuing bidding on those same programs through OHB in Europe. Therefore, the very agreement between SEAKR and Orbital ATK is causing and will continue to cause RUAG harm.

47. RUAG is entitled to specific performance by SEAKR of the Amended JDA. RUAG lacks an adequate remedy at law and will continue to suffer irreparable harm if SEAKR is not enjoined from aiding, promoting, and dealing with, Orbital ATK with regard to the ADDA ASIC technology, or with others in violation of RUAG's right of first refusal.

48. Unless preliminary and permanent injunctive relief is granted, RUAG will not be adequately secured in its rights pursuant to the Amended JDA.

49. Alternatively, RUAG is entitled to rescind the Amended JDA. RUAG will restore everything of value received under the Amended JDA, conditioned on a simultaneous restoration to it of the consideration it furnished to SEAKR.

50. RUAG is entitled to restitution of its costs, expenses and damages incurred as a result of the Amended JDA in order to restore the parties to their respective positions as they existed prior to the Amended JDA.

## THIRD CLAIM FOR RELIEF
### Breach of the Implied Covenant of Good Faith and Fair Dealing by SEAKR

51. RUAG hereby adopts and incorporates by reference its allegations in Paragraphs 1 through 30, 32 through 40, and 42 through 50 above as though set forth fully herein.

52. As detailed more particularly above, SEAKR and RUAG are parties to the JDA and the Amended JDA.

53. Pursuant to the express terms of the JDA and the Amended JDA, SEAKR has discretionary authority to determine certain terms under the agreements, such as partnering with RUAG as a preferred partner on projects and providing RUAG with a right of first refusal to acquire any intellectual property rights in the ADDA ASIC.

54. Under Colorado law, every contract includes a duty of good faith and fair dealing.

55. RUAG relied on SEAKR's good faith in exercising its discretion under the JDA and the Amended JDA.

56. SEAKR did not act in good faith in implementing the terms of the JDA and the Amended JDA. As set forth above, SEAKR interfered with and failed to secure RUAG's exclusive rights and preferred partner status under the JDA and Amended JDA. Furthermore,

SEAKR unilaterally entered into agreements with third parties which block RUAG's opportunities pursuant to the JDA and Amended JDA.

57. As a direct and proximate result of SEAKR's breach of the implied covenant of good faith and fair dealing, RUAG been damaged in excess of the minimum jurisdiction of this Court.

**<u>FOURTH CLAIM FOR RELIEF</u>**
**Fraud and/or Fraudulent Inducement by SEAKR**

58. RUAG hereby adopts and incorporates by reference its allegations in Paragraphs 1 through 30, 32 through 40, and 42 through 50, and 52 through 57 above as though set forth fully herein.

59. As detailed more particularly above, SEAKR intentionally, recklessly or maliciously misrepresented and omitted material facts in connection with the JDA and Amended JDA. These false and misleading statements and omissions include, but are not limited to, SEAKR's failure to disclose CSP Associates' pre-existing agreement with SEAKR blocking applications of ADDA at X-band, misrepresentations regarding promised exclusivity of RUAG's rights in ADDA ASIC technology in the European Marketplace, misrepresentations about RUAG's status as a preferred partner for programs with SEAKR, misrepresentations regarding the RUAG's right of first refusal to acquire intellectual property rights in the ADDA ASIC and the misuse of the U.S. Department of Commerce letter.

60. SEAKR misrepresented their level of control of satellite payload procurement activities, in particular on the O3b system, on which SEAKR is partnered with Orbital ATK. SEAKR represented themselves as payload lead, with the ability to select partners (and therefore to provide work share to RUAG). Nonetheless, it appears that procurement documents were

generated by Orbital ATK, and it appears the actual equipment selection is being done by Orbital ATK. As such, SEAKR's ability to offer RUAG work scope on programs is more limited than as previously represented by SEAKR.

61. SEAKR represented a market size of digital payload processors vastly in excess of what RUAG now understands to exist. SEAKR represented to RUAG in June 2016, when RUAG was considering investment in the ADDA ASIC development, that SEAKR would capture one third of the serviceable market by 2017 and two thirds of the serviceable market by 2019 with its ADDA product. Even if the ADDA product existed in time to enter the market in 2017, which now appears highly unlikely, it is an extremely unreasonable assumption that SEAKR could achieve such market penetration in such a short period of time, especially with nearly every customer building its own digital payload product.

62. SEAKR's misrepresentations and omissions were intended to and did deceive RUAG, for the purpose of causing RUAG to invest in SEAKR and enter into the JDA and subsequently the Amended JDA.

63. RUAG reasonably relied upon SEAKR's representations based on SEAKR's representations made about SEAKR's technology and desire to work with RUAG.

64. At the time of RUAG's entering into the JDA, RUAG was unaware of the falsity of the material misrepresentations and omissions made by SEAKR.

65. Similarly, at the time of RUAG's entering into the Amended JDA, RUAG was unaware of the falsity of the material misrepresentations and omissions made by SEAKR regarding SEAKR's intent to perform the terms of the Amended JDA, including but not limited

to the conversion of the JDA into a work share agreement that would enable RUAG to receive some benefit under the Amended JDA.

66. Had RUAG known that SEAKR had no real intent to honor the commitment to transform the JDA into a workshare agreement pursuant to the Amended JDA, RUAG would have terminated the JDA and never entered into the Amended JDA.

67. As a direct, proximate, and foreseeable consequence of SEAKR's misrepresentations, nondisclosures, and omissions, RUAG entered into the JDA and Amended JDA, each of which have caused RUAG damage.

68. RUAG seeks damages for fraud and, in addition, reserves its right pursuant to Colorado Revised Statutes § 13-21-102, subs. (1.5)(a) to seek leave to amend the claim to include punitive damages. Absent being enjoined, RUAG has and will continue to suffer irreparable harm and injury due to SEAKR's fraudulent conduct.

## PRAYER FOR RELIEF

WHEREFORE, RUAG respectfully requests that the Court grant the following relief:

(a) For damages from the multiple breaches of the JDA and the Amended JDA by SEAKR;

(b) For rescission of the JDA and/or Amended JDA;

(c) For restoration of the parties to their respective positions as they existed prior to the transactions;

(d) For a Preliminary Injunction which:

(i) Requires SEAKR to specifically perform, uphold, and enforce RUAG's exclusive rights as set forth in the JDA and/or Amended JDA;

(ii) Enjoins and restrains SEAKR from transferring technology in violation of RUAG's right of first refusal or from pursuing relationships with Orbital ATK which infringe upon RUAG's exclusive rights to the European Marketplace;

(e) For compensatory damages according to proof; and

(f) For costs of suit, attorneys' fees, pre-judgment interest, and such other and further relief as the Court deems just and proper.

Dated: March 11, 2017

Respectfully submitted,

*s/ Scott R. Miller*

Scott R. Miller, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071
Telephone: 213.620.1780
Email: smiller@sheppardmullin.com

Matthew E. Johnson (#40984)
WHEELER TRIGG O'DONNELL, LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Facsimile: 303.244.1879
Email: johnson@wtotrial.com

*Attorneys for Plaintiff RUAG Switzerland, Ltd*